We begin by showing the State Appellate Court unreasonably applied the decision in Rock v. Arkansas, which is clearly established U.S. Supreme Court law and which applies here. As the Strickland and Sullivan claims are derivative of the State Appellate Court's unreasonable application of Rock v. Arkansas, we start with the Rock decision itself. First, the issue in Rock was defined by the U.S. Supreme Court itself, whether a criminal defendant's right to testify may be restricted by a state rule that excludes testimony. The Rock court Counsel, let's cut to the chase if you don't mind. You don't have a lot of time. Your client did testify. The question is whether the erroneous instruction that required corroboration for his testimony was problematic, which is different from not allowing him to testify. It is. So in view of the things that he did say in his own testimony, which it seemed to have established all the elements of aiding and abetting, and we're back to aiding and abetting in this case, I have some difficulty with the argument that it was unreasonable for the court to conclude that there wasn't prejudice. Well, first, I want to make the point that in Rock, it wasn't a case where the defendant wasn't allowed to testify at all. She was allowed to testify as to some things but not other things. And that's just like Rock. So excuse me for interrupting, but let's just assume that we would find that it's error what the state trial court instructed because obviously there's no corroboration required in the manner that was instructed. And I think that's why Judge Graber said let's cut to the chase, that the real, the crux of the issue in this case is how was he prejudiced under Brecht? And I guess the key issue is that he did, he testified that he found a court to use to tie her up. And at that point, he had to have, you know, at least contemplated that a sexual assault would take place. Well, the, first of all, I think we have to assume, this court must presume that the jury followed, conscientiously understood and followed the instructions here. That is a presumption that is not a one-way street, as the court said in Franklin v. Francis, a U.S. Supreme Court decision. So if this court applies that presumption, then here's what we're left with. When Miles told Spate to grab something to tie Jasmine up, Miles said it was so she wouldn't be able to call the police. And Spate thought if he would have got Miles out of the house, he would find something else, it would be a good thing to tie Jasmine up. And when Spate found and gave the cord to Miles to tie Jasmine up, he also thought it could prevent Miles from hitting Jasmine and that Miles would then leave her alone. Now, these, of course, statements of his intent were not supported or corroborated, but they would have gone to a complete defense to the intent element if they had been believed. And it would only take one jury. One jury needs to believe that. Was his pretrial statement to the police introduced in evidence? It was. And in that statement, didn't he say that after intending to steal the computer game or whatever kind of game it was, that they grabbed Ms. Doe, that Miles hit her, Miles took off her pants, Miles said, I'm about to fuck her, and she said no or don't, and that he knew that there was an attempted rape in progress before he got the cord and wrapped it around her arms. That's his pretrial statement. Why doesn't that all by itself, his own words, and they were corroborated because Ms. Doe, I think, also testified to what had happened to her. So his statements were, in fact, corroborated, but maybe the wrong ones from his point of view. I do not believe, and I think I've included the citations in the reply brief, that Jasmine did not testify to Miles ever stating what he was going to do. That came completely from That's got to go out of the calculus. And the problem with the State Appellate Court's opinion here is it disposed of this issue without making that distinction. Except, see, your claim is that they shouldn't have been told that corroboration was required. So if we go with that and they weren't told that, then his statements about what he knew when he gave the cord, and he also said in that statement that he did part of the tying up. So I guess I just have a hard time seeing that there's prejudice here. Well, if the jury did not consider his self-exculpatory testimony, that is a Sixth and Fourteenth Amendment violation. If he was not able to present that, and if you assume— There's contradictory stuff that he had said earlier, and his testimony was contradicted by the victim. But the jury was told, unless his statements were corroborated or supported, they were not to consider his testimony. But in looking at—when we look at prejudice, we have to look at the whole record, correct? And to determine if they had been correctly instructed, what would have happened? For harmless beyond a reasonable doubt, you don't look at the record. You look at the evidence that was admitted. Evidence that was not— I thought you said his previous statement was admitted. It was admitted into evidence, but it was not admissible under the instruction. Did you make that argument at the trial court? Was that argument made at the trial? No, because trial counsel, they're all in an instructions conference. The record says they discussed this— Was there an objection to the admission of the statement to the police of any kind? No, there was not. Nonetheless, California CalCRIM instruction number 301 applies to statements or testimony. And you'll recall when they gave 335 about Miles' testimony, he didn't testify, so they substituted statements in that instruction. Now, 301 and 335 are companion instructions, and I think I'll reserve my two minutes now. You certainly may do that. May it please the Court, Charity Whitney, on behalf of the respondent, instruction 301 could not have prejudiced Petitioner here in light of the evidence of his guilt. As you were explaining earlier, Your Honor, the evidence of— You agree, of course, that it was wrong. The instruction was just flat wrong. This was an inaccurate instruction. That's correct, Your Honor. This is not accurate under state law. But as Your Honors pointed out, the evidence of guilt in this case was very weighty. The victim's testimony was harrowing about the event that happened here, and Petitioner's testimony was largely consistent with what the victim said happened. And most importantly, his third police interview admitted much. He admitted that he grabbed the victim when he entered her home. He admitted that he heard Miles say, I'm about to fuck her or I'm about to rape this bitch. After that, he admitted twice that he knew Miles was trying to rape the victim. Nevertheless, he then admitted that he went and got a cord and tied her arms behind her back and then walked away. What is your response to counsel's argument that his prior statements to police were inadmissible because uncorroborated? I think that counsel is conflating two different concepts, the concept of admission and the concept of how evidence can be considered by the jury. And there's no question here that, of course, these statements were admissible and they were admitted and they were heard by the jury and considered by the jury. I think what Petitioner's counsel is trying to get at is that she doesn't believe under 301 the jury could have considered it the way Petitioner would have liked. That, of course, is not a question of admissibility of the evidence. It's a question of how that evidence was considered. It's also, I wondered about the instruction because the instruction, the erroneous instruction was except for the testimony of Mr. Spade, which requires supporting evidence. That's the piece that's wrong. The testimony of only one witness can prove any fact. So by its terms, it did not necessarily apply to a prior statement. I would agree with that. They may have understood it. I would think they would have understood it to mean the live testimony. I would agree with that, Your Honor. It would be reasonable for the jury to interpret the word testimony to mean what it means. And even, so even if much of the reading of the instruction is as Petitioner claims, with that interpretation, Your Honor, they would be able to look at 301 and find that there was support for Petitioner's testimony. It was supported at large by the victim's statements, which as we've said repeatedly, the victim's version of events and Petitioner's version of events were largely the same. As counsel has pointed out that the victim did not talk about the Miles' statements that were recounted in the statement to police. That was my recollection as well. Do you have a different recollection, and does that matter? No, I would agree with your recollection, but it does not come to anything in this situation because of how the jury would have read 301. Even on its own, the jury would not have read 301. Well, let's assume that that piece is not corroborated and the jury would have rejected it. Is there enough besides that to determine that there is no possible prejudice? Absolutely, Your Honor. Even without the statement that I'm about to fuck her or rape this bitch, Petitioner still saw Miles sexually assaulting her in a number of other ways during the course of the burglary. He saw Miles drag her into the hallway with her pants and her underwear around her ankles and then said, go get something to tie her up with. I think that this is more than enough from which the jury could find that he knew what Miles was intending to do, that Miles was intending to further sexually assault this young woman, and that in fact he did. Counsel, it wasn't, in fact, deficient performance by Spade's counsel not to object to that jury instruction? I don't believe so, Your Honor. The standard for ineffective assistance includes... I said sufficient performance. For deficient performance, it is very high, and I think that what happened here does not rise to that level as I explained in my briefing. Well, counsel, let's suppose that it was deficient performance. Is the prejudice analysis under Strickland different from the prejudice analysis we've been discussing? It comes to the same analysis in many ways, Your Honor. The same facts and factors, of course, that illuminate the instructional error prejudice analysis would inform the prejudice analysis under Strickland here. As far as the actual mechanical tests that are imposed, under AEDPA, as I'm sure you're aware, under AEDPA the prejudice analysis requires that this court find that the state court's prejudice determination was objectively unreasonable under 2254, as well as finding that it had a substantial injurious effect on the Brecht. And that isn't because prejudice is baked into the cake in Strickland. You don't have to quite do that same mechanical analysis. But I think that in this case in particular, the facts and factors cut the same way in both claims. Your Honors, I think that this case is very clear that any mistake in Instruction 301 simply could not have prejudiced the petitioner here, and that the weight of his guilt clearly established beyond any possibility that he was not prejudiced on either claim here. Unless Your Honors have any further questions? I don't believe so. Thank you very much. Thank you very much as well. And you have some rebuttal time remaining. Because the State Appellate Court did not apply ROC, it failed to engage in the interest balancing, excuse me, failed to engage in the interest balancing that led to the reversal in ROC v. Arkansas, where the court there failed to engage in the interest balancing. So what had to happen was you had to balance the constitutional right to present a defense and to testify against the state interest that was being advanced by the rule. Because this instruction was wrong, and I mean it wasn't just a little wrong, it was completely considered. But it should never apply to self-exculpatory testimony of a defendant. If the court had done that, and it had balanced those interests, it would have immediately recognized that it had made a mistake. But it didn't do that, and as a result, Mr. Spate's testimony on count five had to have been based on intent, because as the State Appellate Court found, Spate was not convicted under the natural and probable consequences part of aiding and abetting. So the jury was instructed that someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose, and he or she specifically intends to and does in fact aid, facilitate, promote, et cetera. So as a result, Spate's testimony as to his intent in supplying the court was self-exculpatory, and instructing the jury could not consider it violated his bedrock constitutional rights. Well, you're out of time, and I think I'm out of questions, too. So thank you, counsel. The case just argued is submitted for decision, and we appreciate very much the arguments that both of you have made. They are very helpful. With that, we stand adjourned for this morning's session.
judges: GRABER, WARDLAW, Baker